ARNOLD and wife, Appellants, vs. VOLKMAN, Respondent.

*September 29—October 18, 1904.*

*Highways: Streets: Nonuser: Abandonment: Estoppel.*

A strip of land was dedicated to the public use as a street by the then owner in 1870, was accepted by the public, and continuously used as a street until 1880. In 1879 the plaintiff acquired title to the parcel of land immediately on the south, and in 1894 conveyed such parcel to defendant. From 1880 the strip was not used for public travel, but in 1887 the city constructed a sewer through the strip and has maintained it ever since, and in 1884 accepted a deed thereof from the original proprietors in which the strip was described as "formerly occupied as a street." In 1904 the city conveyed the south half of the strip to the plaintiff, who brought this action to quiet title in himself. In 1894 the position of plaintiff had not been changed or

influenced in the least by the action or non-action of the city. *Held:*

(1) That the strip in question was a part of the public street in 1894.

(2) That defendant, by the conveyance from plaintiffs of the parcel on the south in 1894, acquired title to the south half of the strip subject to the public rights.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed:*

This is an action in equity to quiet the title to a small piece of land, about thirty-three feet in width, in the city of Eau Claire, of which the plaintiffs claim ownership and possession and to which the defendant makes claim. The defendant, by his answer, claims title in himself, but also alleges facts which are claimed to constitute an estoppel. The action was tried by the court and the material facts were found, in substance, to be as follows: In the year 1870 the Eau Claire Lumber Company, being the owner of land in the city of Eau Claire, made and recorded a plat of the same, upon which plat a street called "First avenue" ran north and south, parallel with and a short distance west of the Chippewa river, and two streets, named, respectively, "Ann" and "Ferry" streets, crossed it at right angles, running to the river; block 19 being bounded on the north by Ferry street, south by Ann street, east by Chippewa river, and west by First avenue. Upon said plat a public street sixty-six feet in width, running east and west, was marked through the north part of block 19, extending from First avenue to the river, which street was then occupied and used for public travel, and upon it was the west approach of a public bridge across the Chippewa river. The south half of this strip of land, or street, is the land now in dispute. This street was not named upon the map, but became generally known as "Bridge street," and was continuously used as a street and an approach to the bridge up to the year 1880. In June, 1879, the Eau Claire Lumber Company

conveyed to the plaintiff a parcel of land in block 19 immediately south of Bridge street, describing it as follows:

"Commencing at the point where Bridge street and First avenue intersect, and running south on the line of block number nineteen (19) seventy-five (75) feet; thence to the river on a line parallel with Bridge street; thence on the line of the river to Bridge street; thence on the line of Bridge· street to the place of beginning—being a part of block number· nineteen (19), in Eau Claire Lumber Company's corrected plat of Chapman & Thorp's Second addition."

The situation will be made more clear by reference to the map on next page, on which the strip called "Bridge street" is marked "A" and the parcel purchased by the plaintiff in 1879 is marked "B." In the year 1880 the bridge was swept away by a flood, but was rebuilt in the same year; but, when rebuilt, its west approach was placed upon Ferry street, and the parcel of land formerly known as "Bridge street" ceased to be used as a street, being in fact largely swept away by the flood, and thereafter·Ferry street was familiarly known by the public as "Bridge street," though the name was never legally changed. In March, 1884, the Eau Claire Lumber Company deeded to the city the piece of land formerly called "Bridge street," by metes and bounds, for consideration expressed of $500, and it was described in the deed as land formerly occupied as a street; and in 1887 or 1888 the city constructed a public sewer in said parcel of land, emptying into the Chippewa river, and did some filling thereon, and has continuously maintained said sewer thereon. In February, 1894, the plaintiffs sold to the defendant the piece of land marked "B" on the plat, and described the same in the deed as follows:

"Commencing at the southeast corner of First avenue and Ferry street, in block No. 19, in Eau Claire Lumber Co.'s corrected plat of.Chapman & Thorp's Second addition to Eau Claire city; thence running southerly, on a line parallel with First avenue, 75 feet; thence easterly, on a line parallel with

Arnold v. Volkman, 123 Wis. 54.

said Ferry street, to the Chippewa river; thence northerly, along the line of low-water mark of said Chippewa river, to the southerly line of said Ferry street; thence westerly, along

said Ferry street, to the point of beginning—the same being that part of block No. 19 in said addition lying immediately south of where the old bridge entered Ferry street, and ex-·tends 75 feet along the easterly side of said First avenue."

In this deed the words "Ferry street" were used by mistake· for the words "Bridge street," but the deed has never been re-formed, and no counterclaim is interposed in the present ac-tion for reformation thereof. The defendant took possession of the land so sold immediately after the execution of the· deed, and has remained in possession thereof ever since,. and has also had possession of the south half of Bridge street. The plaintiffs have had no possession since the execution of the last-named deed. In the course of the negotiations for· the last-named purchase, the plaintiffs' agent represented to· the defendant that the premises in dispute were a part of the· public street, and that the city could not sell it, and that it would belong to the defendant. February 6, 1904, the city made a deed of the strip of land in dispute to the plaintiffs for the consideration of $1.

The court concluded, upon these facts, that, while Bridge· street had been abandoned as a street for many years before· the year 1894, still the right of the city to use the same for street purposes had not been lost at that time, and that the deed executed by the Eau Claire Lumber Company to the· city in 1884 conveyed no title, because the title thereto was· in the adjacent property owners, subject to public easement;. that the deed from the city to the plaintiffs conveyed no title; and that the deed executed in February, 1894, by the plaint-·iffs to the defendant, should be reformed by inserting the words "Bridge street" for "Ferry street;" that when so re-formed said deed recognizes Bridge street as still an existing street, and estops the plaintiffs from claiming that it is not a street; that the defendant owns the strip of land in dispute,. subject only to the right of the public to use the same as a street, if any such right still remains, which question was not

decided. Upon these findings judgment was entered for the
defendant, dismissing the complaint, and the plaintiffs ap-
peal.

*Fred Arnold,* for the appellants.

*A. C. Larson,* for the respondent.

WINSLOW, J. In the present case it appears that the piece
of land in question was dedicated to the public use as a street
by the then owner thereof in the year 1870, and that it was
accepted by the public and continuously used as a street
until the year 1880; the plaintiffs, in 1879, having acquired
title to the parcel of land immediately adjoining the street on
the south, and thereby having become owners of the south
half of the street (being the parcel in dispute), subject to the
public easement thereon for street purposes. It further ap-
pears that the public ceased to use the premises for travel in
1880, because the bridge across the river had been swept
away, and, when rebuilt, was approached from another street,
and that in 1887 or 1888 a public sewer was constructed
through the parcel, which has ever since been maintained;
that in 1894 the plaintiffs conveyed to the defendant the piece
of land which they bought in 1879, by a description which,
though erroneous in its calls, sufficiently described the parcel
as that part of block 19 "lying immediately south of where
the old bridge entered Ferry street, and extends 75 feet along
the easterly side of said First avenue." The defendant im-
mediately went into possession of the parcel so sold, and has
remained in possession thereof, together with the south half
of the alleged street, ever since. It is entirely clear that if
the strip in question was still a part of the public street in
1894, when the plaintiffs so deeded to the defendant, then the
defendant acquired title thereto by that deed, subject only
to the public easement, and that thereafter neither the aban-
donment by the city nor conveyance by the city could vest
title in the plaintiffs.

In the view we have taken of the case we find this the only question necessary to be considered, namely, was the land in question a part of the public street in 1894? At that time it had not been used as a street for travel for nearly fourteen years. In 1884 the city had accepted a deed from the original proprietors in which it was described as a strip of land "formerly occupied as a street," and in 1887 the city had constructed a public sewer through the strip, and filled it in, and maintained the sewer ever since that time. This court has uniformly taken advanced ground in favor of the public on the question of the loss of rights in public streets by nonuser or abandonment. The cases are numerous, and it is unnecessary to consider them in detail. Their effect is to hold that municipal corporations cannot sell the streets, nor will mere laches or nonuser on the part of the authorities or the public suffice to defeat public rights, but that cases may arise where private rights and interests have grown up, founded upon the nonaction or action, as the case may be, of the public, so that the prevention of injustice will require the application of the well-understood principles of estoppel as against the public right. *Trester v. Sheboygan,* 87 Wis. 496, 58 N. W. 747; *Reilly v. Racine,* 51 Wis. 526, 530, 8 N. W. 417; *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 61 N. W. 1108; *Reuter v. Lawe,* 94 Wis. 300, 68 N. W. 955; *Ashland v. C. & N. W. R. Co.* 105 Wis. 398, 80 N. W. 1101; *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515.

Applying this principle to the present case, we find nothing amounting to an estoppel *in pais* in the year 1894 or prior thereto. The most that can be said is that there was nonuse of the strip by the public for street purposes for nearly fourteen years, and that the public in 1884 accepted a deed of the strip from the original proprietor. The plaintiffs did not act, and paid out no money in reliance upon any act or refusal to act on the part of the city. Their position had not, in 1894, been changed or influenced in the least. The conclu-

sion necessarily is that the public rights were unimpaired in 1894, and that the defendant then acquired title to the strip in dispute, subject to the public rights. Whether those public rights have been lost by abandonment and estoppel since that time is immaterial, and was not determined in the trial court, nor will any attempt be made to determine the question here. Any abandonment since that time would not inure to the plaintiffs, and the city could not deed away the public streets.

*By the Court.*—Judgment affirmed.